IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

CHRISTOPHER SHELTON HUNTER,   )
   )
       Petitioner,   )
   )
     v.   )     CV 118-041
   )     (Formerly CR 116-045)
UNITED STATES OF AMERICA,   )
   )
       Respondent.   )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner, an inmate at the Federal Correctional Institution in Fort Worth, Texas, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.     **BACKGROUND**

    A.     **Indictment**

On July 6, 2016, the grand jury in the Southern District of Georgia charged Petitioner and three co-defendants in a sixteen-count indictment.  United States v. Hunter, CR 116-045, doc. no. 3 (S.D. Ga. July 6, 2016) (hereinafter "CR 116-045").  Along with naming Petitioner in a forfeiture allegation, the grand jury charged Petitioner in five counts:  conspiracy to distribute and possess with intent to distribute marijuana, cocaine, and cocaine base (Count One); possession with intent to distribute marijuana (Counts Seven and Ten); possession of a

firearm in furtherance of a drug trafficking crime (Count Eleven); and possession of a firearm by a convicted felon (Count Fourteen). Id. Prior to the federal indictment, Petitioner had twice been arrested on state charges related to the eventual federal charges brought against him, and after both state arrests, he posted a bond and was released. Presentence Investigation Report ("PSI") ¶ 5, 14, 16.

As originally charged, Petitioner faced a statutory sentence of not more than twenty years imprisonment on Count One, not more than five years imprisonment on each of Counts Seven and Ten, and not more than ten years imprisonment on Count Fourteen. CR 116-045, doc. no. 4. As to Count Eleven, Petitioner faced a sentence not less than five years and up to life imprisonment, *consecutive* to any other sentence. Id. The Court appointed attorney Kenneth Crowder under the Criminal Justice Act to represent Petitioner. Id., doc. no. 23.

**B.      Agreement to Plead Guilty**

On February 15, 2017, Petitioner appeared with counsel and pled guilty to the conspiracy charged in Count One. Id., doc. nos. 41, 45-47. Two of Petitioner's co-defendants also pleaded guilty in federal court to the conspiracy charged in Count One. Id., doc. nos. 119, 157. The federal charges against the third co-defendant were dismissed based on the entry of a guilty plea to charges at the state level related to the federal charges. Id., doc. no. 36.

In the plea agreement, the government and Petitioner agreed to recommend to the United States Probation Office and the Court at sentencing that, for purposes of calculating the base offense level under § 2D1.1 of the advisory Sentencing Guidelines, the offense involved at least 400 kilograms but less than 700 kilograms of marijuana. Id., doc. no. 47, ("Plea Agreement"), p. 4. Notably, the Plea Agreement specifically explained the

2

Sentencing Guidelines are advisory and "are based on all of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the facts underlying the particular Count to which Defendant is pleading guilty." Id. at 3. The Plea Agreement also stated, "The government is free to provide full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range." Id. at 4.

In exchange for the guilty plea, the government agreed to (1) dismiss the remaining counts against Petitioner in the indictment; (2) not object to a recommendation for a two-point acceptance of responsibility reduction and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction; and (3) consider filing a motion, based on any "substantial assistance" provided by Petitioner, for downward departure under U.S.S.G. § 5K1.1 or requesting a reduction of Petitioner's sentence under Fed. R. Crim. P. 35. Id. at 3-5.

Petitioner's Plea Agreement contained the following factual basis for his guilty plea:

The elements necessary to prove the offense charged in Count One are (1) that the Defendant conspired or agreed with another person, to try to accomplish a common and unlawful plan, as charged, (2) that, knowing the unlawful purpose of the plan, the Defendant willfully joined in it; and (3) that the object of the unlawful plan was to distribute or possess with intent to distribute marijuana.

Defendant agrees that he is, in fact, guilty of the offense charged in Count One. He agrees to the accuracy of the following facts, which satisfy each of the offense's required elements: That beginning on or before June 2015, the exact beginning date being unknown to the Grand Jury, and continuing until the return of this indictment, in Richmond County in the Southern District of Georgia and elsewhere, the defendant **CHRISTOPHER SHELTON HUNTER aka "STANK"** did knowingly and intentionally combine, conspire, confederate, and agree together with others known and unknown, to commit certain offenses against the United States, that is, to distribute and to possess with intent to distribute marijuana, Schedule I, in

violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and 846.

Id. at 1-2.  With his signature on the Plea Agreement, Petitioner agreed he read and carefully reviewed it with Mr. Crowder, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect."  Id. at 11.

By signing the Plea Agreement, Petitioner also agreed to forfeit any interest in firearms or ammunition involved or used in the knowing commission of the conspiracy in Count One to which he agreed to plead guilty, "specifically a Smith and Wesson, .40 caliber pistol, serial number DUX4614, and ammunition found with said firearm."  Id. at 5. Petitioner further agreed to "entirely waive[] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence.  Id. at 6-7.  Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal."  Id.  Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel.  Id. at 7.  By signing the Plea Agreement, Petitioner additionally attested Mr. Crowder had "represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."  Id. at 8.

At the guilty plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly understood where he was and why he was in court.  Id., doc. no. 137 ("Rule 11 Tr."),

4

pp. 4, 7.  Judge Hall reviewed all the charges against Petitioner in the indictment.  Id. at 7-8.

Petitioner confirmed he had as much time as he needed to go over the charges with Mr.

Crowder.  Id. at 8-9.  Petitioner also testified under oath he was satisfied with the assistance

he had received from Mr. Crowder and that he had read and reviewed the Plea Agreement

with counsel before signing it.  Id. at 9, 11.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty,

and Petitioner affirmed he clearly understood those rights.  Id. at 9-11.  Among the rights

explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the

government's burden to prove guilt beyond a reasonable doubt, the right to present and

cross-examine witnesses, and the right to remain silent.  Id.  Judge Hall also specifically

reviewed the appeal and collateral attack waiver provisions of the Plea Agreement.  Id. at 12-

13. Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the

government had promised anything to procure the guilty plea.  Id. at 13.

Judge Hall reviewed the conspiracy offense to which Petitioner was pleading, as well

as Petitioner's agreement to forfeit his interest "in property used or intended to be used to

facilitate the commission of this crime, including but not limited to a Smith & Wesson 40-

caliber pistol, Serial Number DUX4614, and the ammunition found with that firearm."  Id. at

12.   Judge Hall also confirmed Petitioner had agreed with the government on the drug

quantity to be recommended for purposes of sentencing:  at least 400 kilograms of marijuana

but fewer than 700 kilograms of marijuana.  Id.  Additionally, Judge Hall reviewed the

potential for a twenty-year term of imprisonment for conviction on the conspiracy charge.

Id. at 13.  When asked, Petitioner confirmed that he understood the possible imprisonment

penalty, as well as the potential $1 million fine and three years of supervised release after

completion of the term of imprisonment.  Id. at 13-14.

Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a PSI, and Petitioner's sentence would be based on the information in the PSI. Id. at 15-16.   Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range.   Id. at 16.   Petitioner stated that he understood the sentencing process described by Judge Hall and that no one had promised him he would receive a particular sentence.  Id. at 16.

After reviewing the elements of conspiracy the government would have to prove if Petitioner went to trial and confirming Petitioner sold marijuana only as part of the charged conspiracy, Judge Hall next heard a factual basis for the guilty plea from Investigator Brad Capitosti with the Narcotics Division of the Richmond County Sheriff's Office.  Id. at 17-23. Inv. Capitosti testified that in June 2015, law enforcement was conducting an undercover drug investigation in the Sand Hills Community Center and Ridgewood apartment complex, as well as an independent investigation of Petitioner.  Id. at 19, 20.  During the execution of a search warrant on June 16, 2015, at a residence associated with Petitioner, officers found approximately one pound of marijuana, a 40-caliber Smith & Wesson pistol, and $19,921.  Id. at 19.   Although Inv. Capitosti testified the search occurred at Petitioner's residence, Defendant later clarified to Judge Hall the search was conducted at his girlfriend's residence.  Id. at 19, 23-24.

Petitioner and others were identified as the primary individuals responsible for distributing illegal narcotics at the Ridgewood apartment complex.  Id. at 20.  Officers observed Petitioner, almost on a daily basis, arriving at the complex in a blue Lexus and

usually carrying a black duffle bag sources indicated contained marijuana.  Id.  In February and March 2016, intercepted wireless conversations connected Petitioner to his co-defendants and identified the potential drug supply.  Id. at 20-21. After the execution of various search warrants and interviews with cooperating sources, officers were able to determine Petitioner was commonly known to traffic in large amounts of marijuana, and they recovered drug-related items, including marijuana and cash, from Petitioner's residence and an apartment in the Ridgewood apartment complex Petitioner was known to frequent.  Id. at 21-22.

Other than clarifying the first search Inv. Capitosti described had occurred at his girlfriend's residence, Petitioner had no disagreement with anything presented in the factual basis for the guilty plea, and he admitted his participation in the conspiracy charged in the indictment.  Id. at 23-24.  Petitioner also told Judge Hall he was guilty of, and wanted to plead guilty to, Count One of the indictment.  Id.

Judge Hall then summarized the proceedings as follows:

> With the entry of the signed plea into the record of this hearing, this Court finds that the [Petitioner], Mr. Hunter, is competent.  He fully understands the charge against him.  There is an independent factual basis supporting his plea of guilty containing each of the essential elements of this offense.  He knows the statutory punishment that could be imposed on the charge, and he knows his jury rights, which he has knowingly and voluntarily waived.

> I further find that [Petitioner's] decision to plead guilty this morning was voluntary, knowing, and not the result of any force, pressure, threats, or promises other than the promises made by the Government in the plea agreement.

> Therefore, [Petitioner's] plea is accepted, and I now adjudge him guilty of Count 1 of the indictment based upon that plea.

Id. at 25.

### C.      Sentencing

The United States Probation Office prepared a PSI which set Petitioner's Total Offense Level at twenty-seven, Criminal History Category at III, and Guidelines imprisonment range at 87 to 108 months.  PSI ¶¶ 33, 42, 65.  Because of the agreed-to drug quantity in the Plea Agreement, the base offense level under U.S.S.G. § 2D1.1 was twenty-six.  PSI ¶ 24.   That base level was increased twice for an adjusted offense level of thirty: (1) two levels under § 2D1.1(b)(1) for possession of a dangerous weapon (the 40-caliber Smith & Wesson recovered during the execution of a search warrant at the residence of Petitioner's girlfriend where he resided and 394.7 grams of marijuana he claimed and $19,921 were recovered); and (2) two levels under § 3C1.2 for recklessly creating a substantial risk of serious bodily injury to another person while fleeing from law enforcement by breaking flexible handcuffs and striking an officer in the face with a closed fist before fleeing on foot.   PSI ¶¶ 11, 25, 28.  The adjusted offense level was reduced three points for Petitioner's acceptance of responsibility.  PSI ¶¶ 31-33.  The statutory maximum term of imprisonment for Petitioner's offense was twenty years.  CR 116-045, doc. no. 4, p. 1; PSI ¶ 64.   Had Petitioner been convicted of the 18 U.S.C. § 924(c) charge in Count Eleven dismissed as part of the Plea Agreement, the statutory penalty would have been not less than five years and up to life imprisonment, consecutive to any other sentence.  CR 116-045, doc. no. 4, p. 3; PSI ¶ 66.

Petitioner raised two objections to the PSI based on the firearms enhancement under § 2D1.1(b)(1) and scoring a Criminal History point under § 4A1.1(c) for a possession of marijuana conviction in state court.  See PSI Add.; CR 116-045, doc. no. 131, ("Sent. Tr."), p. 3; doc. no. 74 ("Sent. Mem.").  As explained by Mr. Crowder in great detail in the

8

Sentencing Memorandum and argued vigorously at sentencing, Petitioner believed the state court conviction and sentence for possession of marijuana on July 8, 2015, should have been considered related conduct to the conspiracy to distribute and possess with intent to distribute marijuana to which Petitioner pleaded guilty in federal court.  Sent. Mem., pp. 4-9; Sent. Tr. 3-4, 17-25.  Not only did Petitioner receive one point for the state court conviction, but he received two additional points under § 4A1.1(d) because he committed the federal offense while on probation for the state court possession conviction.  PSI ¶¶ 39, 41.  Thus, rather than having only one point for a criminal history comprised of a First Offender Act possession of cocaine conviction, (PSI ¶ 37), and a Criminal History Category of I, Petitioner had four criminal history points and a Criminal History Category of III.  Sent. Mem., pp. 4-5; PSI ¶ 42.

In overruling the objection, Judge Hall determined that an arrest of an admitted regular user of marijuana for possession of less than one ounce of marijuana was a separate incident, unrelated to the charge to which Petitioner pleaded guilty in federal court:  "a trafficking charge - - a distribution charge, basically."  Sent. Tr. 25.  Judge Hall summarized: "They are two distinct transactions, two distinct arrests, and properly scorable in terms of this Presentence Report . . . .  That is a separate incident that I see unrelated to the trafficking conduct, and I do not see that connection and I will overrule the objection."  Id. at 26.

As to the objection to the two-level enhancement under § 2D1.1(b)(1) for possession of a firearm, Mr. Crowder strenuously argued Petitioner was not the owner of the firearm, nor was he found in physical possession of the Smith & Wesson recovered during the search of his girlfriend's residence.  Sent. Mem., pp. 9-12; Sent. Tr. 12-16.  Mr. Crowder obtained an affidavit from Petitioner's girlfriend claiming ownership of the firearm and asserting

9

Petitioner had no connection to the firearm she kept in her nightstand.  Sent. Mem. Ex. B. Mr. Crowder also pointed out the confidential informant in the case never mentioned a firearm in the residence and none of the discovery mentioned Petitioner carrying a firearm, even though officers had Petitioner under "pretty regular surveillance."  Sent. Tr. 13-14.

Judge Hall overruled the objection, explaining ownership of the firearm was not relevant and pointing out a pound of marijuana and $19,000 was found in a location where Petitioner frequently stayed and had clothing in the bedroom where the weapon was found. Id. at 15.  Judge Hall summarized that despite the affidavit from Petitioner' girlfriend, "serious drug trafficking activity was occurring from that apartment and the presence of a .40 caliber handgun in the nightstand of a bedroom where [Petitioner] presumably had access on a regular basis is sufficient evidence to overcome any suggestion that it was improbable that the weapon was not connected with the offense." Id. at 15-16.

Having overruled the objections, Judge Hall adopted the factual statements in the PSI, as well as the conclusions contained therein, and determined the advisory Guidelines range was 87 to 108 months imprisonment.  Id. at 26.  Prior to announcing the sentence, Judge Hall heard Petitioner apologize to the Court and "take full responsibility for the charges that was brought to me today."  Id. at 27.  Petitioner said he would take his time in prison "as a maturing moment and . . . take it as a growing process and really humbling myself . . . ." Id. Judge Hall imposed a term of imprisonment of 90 months.  Id. at 30; CR 116-045, doc. no. 78.

In keeping with the terms of the Plea Agreement, and in accordance with the information on the Post-Conviction Consultation Certification, (CR 116-045, doc. no. 95), Petitioner did not file a direct appeal.

10

**D.     § 2255 Proceedings**

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his

sentence, raising the following claims:

(1)     His guilty plea "was not intelligent" because Mr. Crowder provided
        ineffective assistance of counsel in the following ways:

        (a) advised Petitioner to plead guilty to the conspiracy charge even
        though the evidence was insufficient to support the plea; and

        (b) failed to conduct basic research and seek to have the charges, which
        originated in state court prior to the return of a federal indictment,
        dismissed.

(2)     Counsel provided ineffective assistance at sentencing by "allowing"
        Judge Hall to misapply the Guidelines and sentence Petitioner for an
        incorrect drug quantity, as well as "dismissed and uncharged conduct"
        for which Petitioner was entitled to a presumption of innocence.

(3)     Counsel provided ineffective assistance by allowing Petitioner to
        proceed to sentencing even though the government breached the plea
        agreement by arguing for sentencing enhancements based on conduct
        pertaining to counts in the indictment it had promised to dismiss.

(See generally doc. no. 1.)

**II.    DISCUSSION**

**A.     Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on an
         Ineffective Assistance of Counsel Claim**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in

Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500,

505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (*per

curiam*).  Under the first prong, Petitioner must show "counsel's representation fell below an

objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a]

petitioner must overcome a strong presumption of competence, and the court must give

significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)). The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).  Furthermore, "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea."  Hill v. Lockhart, 474 U.S. 52, 60 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id. at 59; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012).  In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas."

Hill, 474 U.S. at 58.  Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea.  Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted).  Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial.  Hill, 474 U.S. at 56-59.

### B.    Petitioner Has Not Established He Is Entitled to Relief on Ground One

Petitioner asserts in Ground One his guilty plea "was not intelligent" because Mr. Crowder:  (a) advised Petitioner to plead guilty to the conspiracy charge even though the evidence was insufficient to support the plea; and (b) failed to conduct basic research and seek to have the charges, which originated in state court prior to the return of a federal indictment, dismissed.  As discussed below, the record establishes Petitioner's guilty plea was knowingly and voluntarily entered, and Petitioner's claims about Mr. Crowder's advice and research form no basis for relief.

### 1.    Petitioner's Guilty Plea Was Knowing and Voluntary

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A

plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).

A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Hall reviewed all the charges raised against Petitioner in the indictment, specifically informed Petitioner in clear terms of the charge to which he was pleading guilty, and reviewed the elements of the offense the government would have to prove to obtain a conviction. Rule 11 Tr. 7-8, 12, 17. Petitioner testified he understood this information. Id. at 8, 13, 17. Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 9-11. Petitioner testified that other than the

promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the Plea Agreement. Id. at 4, 13.

Additionally, Judge Hall informed Petitioner of the possible penalty he faced upon conviction. In particular, Judge Hall explained Petitioner could be sentenced up to twenty years in prison for conviction of Count One to which Petitioner was pleading guilty. Id. at 13. Finally, Petitioner also testified he had enough time to discuss the charges with Mr. Crowder and was satisfied with the help he had received from him. Id. at 8-9, 11; see also Plea Agreement, p. 8 ("Defendant believes his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."); p. 11 ("I have read and carefully reviewed this agreement with my attorney.").

Thus, Judge Hall's thorough plea colloquy ensured that Petitioner understood both the nature of the charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not argued, let alone shown, a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea. See Dominguez Benitez, 542 U.S. at 83. Indeed, in his request for relief in the § 2255 motion, Petitioner does not ask to withdraw his guilty plea, but rather only asks to be re-sentenced. (Doc. no. 1, p. 17.) Accordingly, the Court concludes Petitioner's plea was knowing and voluntary.

### 2.   Petitioner's Conclusory Claims in Ground One (a) and (b) Form No Basis for Relief

#### a.   There Was a Factual Basis for the Guilty Plea

In Ground One (a), Petitioner claims Mr. Crowder should not have advised him to plead guilty to the conspiracy charge because there was no factual basis for it. As set forth above in detail, Judge Hall established a factual basis for the plea before accepting it. Petitioner not only signed the written Plea Agreement containing the factual basis for the guilty plea, but he also admitted under oath to Judge Hall that, other than clarifying the location of one search, he agreed with the factual presentation supporting the plea as presented by Inv. Capitosti. Rule 11 Tr. 23-24. The uncontested facts in the PSI, as well as the testimony provided by Inv. Capitosti at the change of plea proceedings, describe Petitioner's extensive involvement in a conspiracy to distribute marijuana. PSI ¶¶ 8-18. As summarized by the government, "[T]he evidence of [Petitioner's] illegal drug distributions was overwhelming: law enforcement officers watched [Petitioner] transact daily drug sales, and searches of two locations tied to [Petitioner] revealed drugs, guns, and paraphernalia associated with distribution." (Doc. no. 6, p. 16.) At sentencing, facts not objected to in the PSI are deemed admitted. See United States v. Bennett, 472 F.3d 825, 833-34 (11th Cir. 2006).

Petitioner has never asserted at any time since the entry of his guilty plea he did not commit the acts to which he pleaded guilty, let alone suggested there was any potential defense to the charge to which he pleaded guilty. Petitioner's belated claims of there being no basis for the guilty plea, unsupported by any factual presentation, are contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding.

17

"[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely"). Petitioner may not now escape the consequences of his sworn declarations to Judge Hall.

Moreover, as explained in the PSI, because the Plea Agreement negotiated by Mr. Crowder resulted in dismissal of all charges other than the conspiracy in Count One, the guilty plea saved Petitioner from exposure to a mandatory consecutive five-year sentence upon conviction of the § 924(c) charge in Count Eleven. PSI ¶ 66. Petitioner also received a three-level decrease in his Total Offense Level score based on acceptance of responsibility by entering a guilty plea. PSI ¶¶ 29, 31-33. Petitioner has not offered any viable defense, and he swore to Judge Hall he was guilty as charged. Petitioner's bald assertions about a lack of evidence to support the guilty plea, devoid of any factual detail and contradicted by the record, do not show Mr. Crowder's representation fell below an objective standard of reasonableness or that Petitioner was in any way prejudiced.

### b.   Petitioner Has Not Identified Any Necessary Research that Was Not Performed or a Valid Basis for Dismissal of the Federal Charges

Petitioner's conclusory claim in Ground One (b) regarding a failure to perform basic research and seek dismissal of the federal charges likewise fails. Petitioner does not specifically identify what basic research was not performed. He does not assert he told Mr.

Crowder about any information tending to rebut the conspiracy charge to which he pleaded guilty.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

Strickland, 466 U.S. at 691.

When a client pleads guilty, defense counsel "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam); see also Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008) (per curiam). Counsel can impart such an understanding by offering his informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue. Wofford, 748 F.2d at 1508. Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses. Chandler, 218 F.3d at 1317. Counsel is not required to "pursue every path until it bears fruit or until all available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)). This is particularly true where, as here, Petitioner has not identified any specific research Mr. Crowder should have performed, let alone shown that additional research would have changed the outcome of the proceedings.

To the extent Petitioner suggests Mr. Crowder should have moved for dismissal of the federal charges which originated from arrests and/or investigation by state authorities, there is no legal support for such an argument. First, Petitioner was not prosecuted in both state

and federal court for the charges brought in the federal indictment, but in any event, because the state and federal governments are separate sovereigns, they are both entitled to prosecute the crimes.  See Heath v. Alabama, 474 U.S. 82, 88 (1985) ("When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" (citation omitted); United States v. Lanza, 260 U.S. 377, 382 (1922) ("We have here two sovereignties, deri[v]ing power from different sources, capable of dealing with the same subject matter within the same territory.  Each may, without interference by the other, enact [criminal] laws . . . .  It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.").

Second, "Congress bestows that authority [to hear a given type of case] on lower courts by statute.  For federal crimes, Congress did so in 18 U.S.C. § 3231, providing district courts with "'original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.'"  United States v. Brown, 752 F.3d 1344, 1348 (11th Cir. 2014) (citing 18 U.S.C. § 3231).  Federal law prohibits, and Petitioner was charged with and convicted of, conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846.  CR 116-045, doc. no. 3, pp. 1-2; doc. no. 78, p. 1.  As the United States filed an indictment charging Petitioner with violating the laws of the United States, 18 U.S.C. § 3231 empowered the district court to enter judgment on the indictment.  See Alikhani v. United States, 200 F.3d 732, 734-35 (11th Cir. 2000) (per curiam).  Mr. Crowder did not perform deficiently, and Petitioner was not prejudiced, by the failure to file a meritless motion to dismiss federal charges which originated with state authorities.

C.    **Petitioner Is Not Entitled to Relief on Any Ineffective Assistance Claim in Ground Two Regarding Sentencing**

In Ground Two, Petitioner claims Mr. Crowder provided ineffective assistance by "allowing" Judge Hall to misapply the advisory Sentencing Guidelines as to drug quantity, as well as to firearm and obstruction enhancements under U.S.S.G. § 2D.1(b)(1) and § 3C1.2, respectively. As explained below, there is no merit to Petitioner's claims regarding misapplication of the Guidelines.

1.    **Drug Quantity**

The Plea Agreement specifically delineated a quantity of drugs to be recommended for use in calculating a Guidelines range:  at least 400 kilograms, but fewer than 700 kilograms, of marijuana. Plea Agreement, p. 4.  Judge Hall specifically confirmed Petitioner had agreed to the drug quantity provision at the Rule 11 proceedings. Rule 11 Tr. 12.  As the PSI explained, interviews of three sources consistently reported Petitioner sold at least ten pounds of marijuana per week for at least two years as part of the conspiracy in Count One, which amounts to 471.73 kilograms, within the stipulated drug amount.  PSI ¶ 18. Petitioner's "disagreement" that he sold only five pounds per week for four years makes no difference to ultimate calculation of 471.73 kilograms.  Id.  Moreover, when Inv. Capitosti testified Petitioner was known to commonly bring in approximately ten pounds of marijuana per week to the Ridgewood apartment complex during the time period covered by the indictment, Petitioner swore to Judge Hall he had no disagreement with that testimony.  Rule 11 Tr. 21-24.  Petitioner may not now escape the consequences of his sworn declarations to Judge Hall.  See Blackledge, 431 U.S. at 74; Rogers, 848 F.2d at 168; Stitzer, 785 F.2d at 1514 n.4.

21

There was no basis for Mr. Crowder to object to the drug quantity used for sentencing purposes. Not only was Mr. Crowder's decision not to object to the drug quantity objectively reasonable, but Petitioner was not prejudiced by the failure to raise a meritless argument. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client." (citing Strickland, 466 U.S. at 692-93).)

### 2.    Firearm Enhancement

Petitioner also claims he should not have received an enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon. As discussed in detail in Part I.C., this enhancement was hotly contested because it was based on the 40-caliber Smith & Wesson recovered during the execution of a search warrant at the residence of Petitioner's girlfriend where Petitioner stayed and 394.7 grams of marijuana and $19,921 were recovered. Mr. Crowder raised an objection to this enhancement, extensively briefed the issue in a Sentencing Memorandum, and vigorously argued the issue at sentencing. See PSI Add.; Sent. Mem., pp. 9-12; Sent. Tr. 12-16. Counsel provided an affidavit from Petitioner's girlfriend claiming ownership of the firearm she kept in her nightstand and asserting Petitioner had no connection to it. Sent. Mem. Ex. B.

Judge Hall considered the arguments but thoroughly explained his rationale for rejecting the objection, explaining ownership of the firearm was not relevant and pointing out a pound of marijuana and $19,000 was found in a location where Petitioner frequently stayed and had clothing in the bedroom where the weapon was found. Id. at 15. Judge Hall summarized that despite the affidavit from Petitioner's girlfriend, "serious drug trafficking activity was occurring from that apartment and the presence of a .40 caliber handgun in the

nightstand of a bedroom where [Petitioner] presumably had access on a regular basis is sufficient evidence to overcome any suggestion that it was improbable that the weapon was not connected with the offense." Id. at 15-16.

Petitioner offers nothing to support his contention that Judge Hall misapplied the enhancement or that Mr. Crowder had other information or legal arguments available to him to make any additional arguments once Judge Hall overruled the objection.  Petitioner's citation to Nelson v. Colorado, 137 S. Ct. 1249 (U.S. 2017) is inapposite.  In that case, the Supreme Court reversed a state procedure whereby a petitioner whose conviction was reversed or invalidated was required to prove his or her innocence by clear and convincing evidence to obtain a refund of costs, fees, and restitution paid pursuant to the invalidated conviction.  137 S. Ct. at 1255.  Petitioner appears to rely on the statement that "the presumption of their innocence was restored" after the convictions were erased, id., to extrapolate the proposition that if he was not convicted of something, *i.e.,* possession of the firearm, he should enjoy a presumption of innocence that would prevent application of the enhancement.

Petitioner's argument compares apples to oranges.  In Nelson, individuals convicted at the state level sought return of funds that had only been required to be paid because of a conviction that had been overturned.  However, under U.S.S.G. § 1B1.3, and as explained in the Plea Agreement, all relevant conduct is considered in calculating the sentencing range. Relevant conduct includes "all acts and omissions committed, aided, abetted . . . . or willfully caused by the defendant."  U.S.S.G. § 1B1.3(1).  Moreover, as Judge Hall explained, to avoid application of the enhancement, the standard under the Guidelines is that the defendant must show it is "clearly improbable" that the weapon was connected to the offense, a much

different standard than the presumption of innocence advocated by Petitioner in these proceedings.  See United States v. Audain, 254 F.3d 1286, 1289 (11th Cir. 2001) (citing § 2D1.1(b)(1) and its commentary to explain once government demonstrates proximity of firearm to site of charged offense by preponderance of evidence, burden shifts to defendant to show connection between weapon and offense was "clearly improbable").

As Judge Hall explained, there was "serious drug activity" in the apartment where Petitioner stayed with his girlfriend and the firearm, along with drugs and approximately $19,000, was discovered.  Sent. Tr. 15.  Mr. Crowder zealously argued against the enhancement, providing written and oral argument, along with an affidavit from Petitioner's girlfriend, but Judge Hall overruled the objection.  Mr. Crowder's thorough presentation of the arguments and evidence available to him clearly met an objective standard for reasonable performance.  His decision not to continue to object after Judge Hall rejected the argument did not prejudice Petitioner, and Petitioner presents nothing here to support any alternative arguments that would have changed the outcome.  There was no ineffective assistance related to application of the firearm enhancement.

### 3.    Obstruction Enhancement

Relying on the same "presumption of innocence" argument rejected in Section II(C)(2), *supra*, Petitioner also argues Mr. Crowder was ineffective for failing to object to the two-level enhancement for obstruction of justice based on Petitioner's actions during the execution of a search warrant at his girlfriend's residence on June 16, 2015, when he broke free of flexible handcuffs and struck an officer in the face with a closed fist before fleeing on foot.  See PSI ¶¶ 11, 28, 45.  Petitioner does not deny he fled or struck the officer, but he complains that because he was not convicted on the state charge for obstruction, his actions

should not be used to enhance his federal sentence.  According to the PSI, the charge was dead docketed.  PSI ¶ 45.

"A district court may enhance a defendant's sentence for reckless endangerment '[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.'"  United States v. Martin, 264 F. App'x 857, 858 (11th Cir. 2008) (per curiam) (citing U.S.S.G. § 3C1.2).  As discussed above, Nelson is inapposite to the Guidelines calculation.  As summarized by the government, the evidence on this enhancement was clear, leaving no basis for Mr. Crowder raise an objection:

> On June [1]6, 2015, during the execution of a search warrant at an apartment rented by [Petitioner's] girlfriend, Glentrice Sapp, [Petitioner] broke free of flexible cuffs and struck an officer.  [Petitioner] then fled and the officer gave chase.  The officer deployed his taser, which struck [Petitioner].  [Petitioner] fell to the ground but continued to struggle with officers.  It took three officers to gain control of [Petitioner].  One officer received lacerations and a swollen face.  (PSR ¶¶ 10-14 and 28).  On these facts, the district court did not err in assessing Hunter a two-level enhancement for obstruction of justice based on reckless creation of a substantial risk of serious bodily injury to another person while fleeing from law enforcement.

(Doc. no. 6, p. 22.)

Mr. Crowder's decision not to object to this enhancement was objectively reasonable, and Plaintiff was not prejudiced by the failure to raise this meritless argument. See Winfield, 960 F.2d at 974.

### D.     Petitioner Is Not Entitled to Relief on Ground Three

In a claim that dovetails with the claims in Ground One, Petitioner claims in Ground Three Mr. Crowder provided ineffective assistance by allowing Petitioner to proceed to sentencing even though the government breached the Plea Agreement by arguing for

sentencing enhancements based on conduct pertaining to counts in the indictment it had promised to dismiss.  According to Petitioner, because the Court considered all relevant conduct even though he pleaded guilty to only Count One, Mr. Crowder was ineffective for allowing the government to breach the Plea Agreement.  The argument is without merit.

As described above, the Plea Agreement specifically explained the Sentencing Guidelines are advisory and "are based on all of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the facts underlying the particular Count to which Defendant is pleading guilty."  Plea Agreement, p. 3.  The Plea Agreement also stated, "The government is free to provide full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range."  Id. at 4.  With his signature on the Plea Agreement and under oath to Judge Hall at the Rule 11 proceedings, Petitioner confirmed he knew he faced a maximum statutory penalty of twenty years, no one had promised him a specific sentence, and Judge Hall could sentence Petitioner within, below, or above the Guidelines range determined by all the information provided in the PSI.  Rule 11 Tr. 13, 15-16; Plea Agreement, pp. 2-4.

Mr. Crowder did not neglect to identify a breach of the Plea Agreement because there was no breach.  As explained above, the dismissal of counts in the indictment did not eliminate consideration of relevant conduct in formulating the sentencing range under the Guidelines.  The Plea Agreement clearly explained the government could inform the Court of all relevant conduct.  Providing information used to apply enhancements and/or arguing against defense objections to the application of an enhancement did not breach the Plea Agreement.

Petitioner's suggestion he received no benefit from the Plea Agreement because of this alleged breach is mistaken.  Entering the Plea Agreement saved Petitioner from exposure to a mandatory consecutive five-year sentence upon conviction of the § 924(c) charge in Count Eleven and provided a three-level decrease in his Total Offense Level score based on acceptance of responsibility.  PSI ¶¶ 29, 31-33, 66.  As a result of the Plea Agreement, Petitioner received a sentence of seven and a half years, well less than half the possible statutory maximum sentence of twenty years for the single conspiracy count to which Petitioner pleaded guilty.

There was no basis for Mr. Crowder to argue the government had breached the plea agreement.  Counsel is not ineffective for failing to raise a meritless argument.  See Winfield, 960 F.2d at 974.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 8th day of February, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA